FILED

JUN - 5 2008
JUN -5 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FILED

JUN - 5 2008
JUN 5 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. YARMO GREEN (B-71883) | ) ) ) | **08CV3250** |
| Petitioner, | ) ) | **JUDGE ASPEN** |
| vs. | ) ) ) | **MAGISTRATE JUDGE COLE** |
| ANDY OTT Warden, Graham Correctional Center | ) ) ) | |
| Respondent. | ) ) ) ) ) | Case Number of State Court Conviction: No. 95 CR 1762 |

### PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered:
   Circuit Court of Cook County, Criminal Division, Chicago, Illinois

2. Date of judgment of conviction:
   Convicted - September 12, 1995; Sentenced - December 1, 1995

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   Attempt First Degree Murder; Aggravated Battery

4. Sentence(s) imposed:
   Forty (40) year term to run concurrently with the three (3) year term

5. What was your plea? (Check one)    (A) Not guilty     ( X )
                                       (B) Guilty         (   )
                                       (C) Nolo contendere (   )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   N/A

Revised: 7/20/05

## PART I – TRIAL AND DIRECT REVIEW

1.  Kind of trial:  (Check one):          Jury  ( X )          Judge only  (  )

2.  Did you testify at trial?          YES  (  )          NO          ( X )

3.  Did you appeal from the conviction or the sentence imposed?  YES  ( X )   NO (  )

    (A)  If you appealed, give the

        (1)  Name of court:    Appellate Court of Illinois, First Judicial District

        (2)  Result:          Convictions and sentence affirmed

        (3)  Date of ruling:    August 18, 1998

        (4)  Issues raised:

            (1)  The State failed to prove beyond a reasonable doubt that Green had the specific intent to kill
                 Briseno.

            (2)  Green's sentence was excessive in light of his young age, lack of criminal background, and the
                 circumstances of the case.

    (B)  If you did not appeal, explain briefly why not:

        N/A

4.  Did you appeal, or seek leave to appeal, to the highest state court?   YES ( X )          NO (  )

    (A)  If yes, give the

        (1)  Result:          Petition Denied

        (2)  Date of ruling:    December 2, 1998 (*People v. Green*, 181 Ill. 2d 579, 706 N.E. 2d 499 (1998))

        (3)  Issues raised:    Issues raised on direct appeal (See (A)(4)).

    (B)  If no, why not:    N/A

5.  Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes (  )   No ( X )

    If yes, give (A) date of petition:  N/A          (B) date *certiorari* was denied:   N/A

Revised: 7/20/05

## PART II – COLLATERAL PROCEEDINGS

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

    YES ( X )   NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A.  Name of court:  Circuit Court of Cook County, Criminal Division, Chicago, Illinois

    B.  Date of filing:    December 1, 1998 (*Pro-se* Post Conviction Petition); November 9, 1999 (Supplemental *Pro-Se* Post Conviction Petition adding legal authority to same claims raised in December petition)

    C.  Issues raised:

       (1) Trial counsel was ineffective for allowing perjured testimony provided by the victim, Alfonso Briseno's, mother regarding Alfonso's medical condition to go uncorrected at trial.

       (2) Green's right to confront witnesses against him was violated by allowing Alfonso's mother to testify about what Alfonso's therapist allegedly told her concerning his condition.

       (3) The sentence was excessive in light of Green's lack of criminal background and rehabilitative potential.

       (4) Appellate counsel was ineffective for not raising an issue regarding the ineffectiveness of Green's trial counsel.

    D.  Did you receive an evidentiary hearing on your petition?        YES ( X )   NO ( )

    E.  What was the court's ruling?      Circuit Court granted the State's Motion to Dismiss

    F.  Date of court's ruling:    May 3, 2004

    G.  Did you appeal from the ruling on your petition?        YES ( X )   NO ( )

    H.  (a)    If yes, (1) what was the result?    Dismissal of PC affirmed

                        (2) date of decision:    January 12, 2007
                                            (*People v. Green*, No. 1-04-1552 (Rule 23 Order))
                 Issues raised:

       (1) Yarmo Green is entitled to at least an evidentiary hearing under the post conviction hearing act on all of the following issues:
          (A) Green was deprived his Sixth Amendment right to the effective assistance of trial counsel because his trial counsel failed to investigate, read discovery materials, or present vital evidence, and was addicted to crack-cocaine, marijuana, and to be mentally troubled during his representation of Green;

          (B) Green's right to due process of law was violated when the State failed to correct false testimony presented at trial and relied on by the Court in sentencing; and,

          (C) Green's appellate counsel failed to effectively represent Green.

       (2) The dismissal of Yarmo Green's pro-se post conviction petition should be reversed and the cause remanded for further proceedings because the record reveals that his post conviction counsel did not comply with the Illinois Supreme Court Rule 651(c) and did not afford Green with reasonable assistance at his post conviction proceeding.

Revised: 7/20/05

(b)  If no, explain briefly why not:  N/A

I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

YES ( X )  NO ( )

(a)  If yes, (1) what was the result?  Petition Denied.

(2) date of decision:  May 31, 2007

(b)  If no, explain briefly why not:  N/A

2.  With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?  YES ( )  NO ( X )

A.  If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

1.  Nature of proceeding  _____

2.  Date petition filed  _____

3.  Ruling on the petition  _____

4.  Date of ruling  _____

5.  If you appealed, what was
    the ruling on appeal?  _____

6.  Date of ruling on appeal  _____

7.  If there was a further appeal,
    what was the ruling ?  _____

8.  Date of ruling on appeal  _____

3.  With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?  YES ( )  NO ( X )

A.  If yes, give name of court, case title and case number: N/A
B.  Did the court rule on your petition?  If so, state

(1)  Ruling:  N/A
(2)  Date:  N/A

4.  With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?  YES ( X )  NO ( )

If yes, explain:

I will soon be filing, or have an attorney file on my behalf, a successive post-conviction petition and/or a 735 ILCS 5/2-1401 petition in a State of Illinois circuit court because of newly discovered evidence regarding false testimony that was given at my trial, which proves my innocence of the attempted first degree murder of Alfonso Briscno, or at least proves that the State committed misconduct and allowed false testimony to be used against me in order to convict me.  The only witness at my trial to testify that she actually witnessed me punch Alfonso in the head has now recanted her testimony and explained that she was coerced to testify as she did by the State and police.  Her sworn affidavit is attached hereto as Exhibit #1.

Revised: 7/20/05

## PART III – PETITIONER'S CLAIMS

1.    State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

### Statement of facts relating to all of Green's claims:

On December 26, 1994, Yarmo Green was a 17-year-old high school football star with great potential, who had no criminal history. Green and two teenaged members of the Maniac Latin Disciples, picked a fist fight with four members of the Maniac Latin Lovers. After a bench trial, Green was charged with the attempted first degree murder of Alfonso Briseno and aggravated battery of Tito Lopez. Based on the testimony of Natalie Perez and Briseno's mother, the trial court found Green guilty of both, found the attempt murder offense to be brutal and heinous, and sentenced Green to an extended term of forty (40) years.

Natalie Perez, a 15-year-old Maniac Latin Lover, was the sole witness to testify that Green hit Briseno, her 14-year-old fellow gang member, once, with an open hand, and rendered the boy unconscious. The others saw Briseno unconscious on the ground, but did not see how he got there. Natalie testified that she had been threatened by her fellow gang members to testify against Green, at least one of whom had accused *her* of hurting Briseno. When first called to the stand, Natalie refused to answer questions regarding whether she saw someone hit Alfonso. Then when she was recalled the next day, Natalie reluctantly testified that she witnessed Green hit Briseno. Now, the girl known as Natalie Perez, has come forward and admitted that her real name is Adelaide Cornell and that she committed perjury at Green's trial because she was threatened by the police and prosecutor to do so. (See Exhibit #1). She now admits that she never saw Green hit Alfonso and knows that he did not do so because he was talking with her by the alley during the entire incident.

The extent and nature of Briseno's injuries were described by a single witness, Briseno's mother, who claimed that her son was nearly totally incapacitated as a result of the head injury sustained in this incident, and denied that he had suffered any injuries subsequent to this event. However, Briseno's medical record, which had been stipulated to at trial, revealed that contrary to his mother's testimony, not only had Briseno been progressively recovering from his injury, but Briseno had been in a fight a few months after this incident where he sustained multiple blows to his head. A Sun-Times reporter also provided an affidavit, contrary to the trial evidence, that through his investigations of Yarmo Green's case he discovered that Briseno had attended parties and school shortly

5                                                          Revised: 7/20/05

after this incident. The same Sun-Times reporter has provided another affidavit, attached hereto as Exhibit #2, in which he stated that he received a threatening phone call when he was investigating Green's case, which he believed was meant to intimidate him into stopping his investigations. Briseno's medical records also revealed that he had a blood alcohol content of .13, had consumed a considerable amount of cocaine, and had been smoking marijuana at the time of his injury.

Moreover, Green's trial counsel, whom had been out of law school for only a little over a year, was severely unequipped to represent Green. As evidenced by the Attorney Registration and Disciplinary Commission disciplinary opinion, attached hereto, that reveals Green's trial counsel, Matthew Jasniewski, was addicted to crack-cocaine and marijuana, and suffered from severe mental problems during the time he represented Green. (Ill. S. Ct. Disciplinary Opinion No. M.R. 15359, attached hereto as Exhibit #3). Counsel's license to practice law was suspended and remains suspended until further order of the court. He was found to be "severely dysfunctional" and "incapable of independent functioning in a professional capacity." (Disciplinary Opinion, Pg. 4).

The Illinois Appellate Court's decision upholding the dismissal of Green's post conviction petition, *People v. Green*, Order No. 1-04-1552 (January 12, 2007), raised numerous issues that warrant review. However, Green's petition for rehearing was denied on March 6, 2007, and Green's petition for leave to appeal to the Illinois Supreme Court was also denied on May 31, 2007.

### (A)  Ground one:

Yarmo Green's conviction for attempted first degree murder of Alfonso Briseno was obtained through the knowing use of false testimony of two of the State's main witnesses - Natalie Perez, who now admits (*See* Exhibit #1) that she was forced to falsely testify that she witnessed Green strike Briseno in the head, and Briseno's mother, who lied about the extent of Briseno's injuries and that he had not been in a subsequent fight - which, deprived Green of his right to due process and a fair trial. Furthermore, there is a reasonable likelihood that the false testimony affected the outcome of the trial and sentencing, as Natalie was the only witness to testify that she actually saw Green allegedly strike Briseno, and Briseno's mother was the only witness to testify about the injuries allegedly suffered by her son as a result of the incident. Without the perjured testimony, the State's entire case would have been undermined, and it is more likely than not that no reasonable fact-finder would have convicted Green.

6                                                    Revised: 7/20/05

**Supporting facts:**

**(1) Testimony from Adelaide Cornell, known at trial as Natalie Perez, violated Yarmo Green's rights to due process and a fair trial in violation of the Fourteenth Amendment:**

Natalie was the only one of the six people present who claimed to see someone hit Briseno. The first day of trial, Natalie refused to answer the questions about who hit Briseno. She explained that she was being threatened and that she felt forced to come to court and testify because she had no choice. She said only that once Briseno was hit, he fell straight to the ground because "he was drunk, on cane, and weed." Natalie also testified that she observed Briseno walking funny that night as he walked out of the apartment building towards them, but she also commented that he always walked weird and funny. Natalie became pregnant a few months after this incident by a gang member of the Maniac Latin Disciples, the same gang Green was a member of at the time of the incident.

Natalie was re-called the next day, and testified that she actually saw Briseno get hit once by Green. She said that Green's hand was open and that he did not hit Briseno with a fist. At first when Natalie was asked whether she could see what Green hit Briseno in the head with she responded, "Not exactly." Then she was asked whether Green was holding something in his hand when he struck him in the head and she responded, "I could not really tell." Next, Natalie testified that it looked like there was an object in Green's hand that was not big, but she was not exactly sure how big it was. Finally, on cross examination, Natalie was asked, "Could you see [Green] holding anything in his hand?" and she responded, "I said before, no, I couldn't."

On May 14, 2008, an Adelaide B. Cornell, contacted an attorney in Chicago, who later contacted Green, and informed him that Cornell is the fifteen (15) year old girl that testified against Green at his trial under the name "Natalie Perez." She has sworn under oath that she was threatened and forced to testify as she did at trial, when in fact she knew it to be untrue. (*See* Attached Affidavit of Adelaide B. Cornell, Exhibit #1). She now swears that she never witnessed Green ever strike Alfonso Briseno in the head. Moreover, she swears that she knew that Green did not do so because he was over by the alley and the mini-van talking with her, when Briseno ended up either getting hit or falling to the ground and hurting his head. She also states that she received money and was threatened by the police and prosecution that if she did not testify against Green that they would have social services take away her newborn daughter. She

7                                                                                    Revised: 7/20/05

attempted to admit to committing perjury twice before by calling the prosecutors office, but they told her that "if you pursue this, you will be arrested for perjury" and to "leave it alone, the case is closed." Because she has felt guilty for the past 13 years for committing perjury when she falsely accused Green of striking Briseno, she has provided Green with her signed and notarized affidavit understanding that she may face repercussions for admitting to committing perjury. Finally, Adelaide Cornell, known as Natalie Perez at Green's trial, swore in her affidavit that she was not forced, coerced, paid, threatened or promised anything, by anyone in order to execute the affidavit, but that she was doing so freely and voluntarily.

Additionally, the Sun-Times reporter, Taylor H. Bell, who had written articles on Yarmo Green when he played football for Mather High School, also wrote some articles on the progression of Green's case after he was arrested and placed on trial for attempted murder. While conducting some investigation into Green's case and Briseno's allegedly injuries, he discovered that Briseno had attended school shortly after the incident, contrary to what his mother had testified to at trial. Shortly after Mr. Bell began his investigations he received a threatening phone call late at night from a male. (*See* Attached Affidavit of Taylor H. A. Bell, Exhibit #2). The caller did not identify himself, but instead kept asking Mr. Bell why he was interested in Green's case and why was he looking into it? The caller, in a threatening nature, advised Mr. Bell to "forget about it" and to "drop it." Mr. Bell believes that the phone call was for the purpose of getting him to stop investigating Green's case.

Therefore, it is clear that more investigation is warranted, or that an evidentiary hearing is required, in order to more fully explore the claim that the prosecution and the police purposely threatened and coerced witnesses and others connected with Green's case in order to get a conviction. The fundamental fairness of a conviction or sentence obtained through the use of false evidence has long been recognized as a violation of due process. *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 766 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959); *People v. Olinger*, 176 Ill. 2d 326 (1997). The knowing use of false testimony should not be allowed to stand, and should be investigated further to ensure that Green has not been convicted and sentenced based on perjured testimony. Furthermore, there is a reasonable likelihood that the false testimony affected the outcome of the trial and sentencing, as Natalie was the only witness to testify that she actually saw Green allegedly strike Briseno. Without the perjured testimony, the State's entire case would have been undermined, and it is more likely than not that no reasonable fact-finder

8                                                                    Revised: 7/20/05

would have convicted him of the attempted murder Alfonso Briseno.

**(2) Testimony of Anna Marcial, Alfonso Briseno's mother, violated Yarmo Green's rights to due process and a fair trial in violation of the Fourteenth Amendment:**

Briseno's mother, Anna Marcial, was the only witness at Green's trial to testify for the State regarding Briseno's injuries sustained as a result of the incident involving Green. She testified that Briseno could not walk or respond to questioning for over a month and that once he was discharged from the rehabilitation institute she had to "take care of him 24 hours a day, not leave him alone, give him his medication." She also testified that Briseno was not able to perform necessary acts without her and that she had to dress, undress, and bathe him for about four or five months after the incident. In addition, when asked directly if Briseno had been injured after the December 1994 incident, Ms. Marcial testified that Briseno had not had any recent injuries besides the one involving Green. As of the dates of trial, September 11 and 12, 1995, Ms. Marcial testified that Briseno was unable to return to school and she did not know when he would be returning since he still attended therapy for his injuries.

Briseno's medical records prove Ms. Marcial's testimony to be false and very misleading. After Briseno's injury on December 26, 1994, the reports indicate that, although he was badly injured, he was steadily improving and was not nearly hurt to the extent Ms. Marcial testified. In fact, as of March 9, 1995, the medical records reveal that Briseno was walking and talking. Briseno's medical records also state that he was "doing better" in February and March up until he was involved in another altercation where he had his head beaten multiple times, thus sustaining further head trauma. However, at trial when counsel for one of Green's co-defendant's directly asked Ms. Marcial if her son had received any other injuries after the one in question, she falsely answered "no." The State objected, but the court allowed her answer of "no" to stand. Obviously, as of at least March 30, 1995, just three months after the incident with Green, Briseno must not have required "24 hours a day" care as Ms. Marcial had testified he required for "four or five months" since Briseno was out with friends late at night and involved in a subsequent gang fight.

In Briseno's hospital admission record for the March 30, 1995 incident, it was noted: "Head injury in December '94...he was doing well following that injury until last night when he was assaulted and hit over the head multiple times." Also, the discharge note from his physical therapy dated April 4, 1995 stated: "...head injury December 94 requiring craniotomy. Progressing well until 3-30-95 when he was

9                                    Revised: 7/20/05

assaulted/hit multiple times." Then on April 20, 1995, when Briseno returned for a follow-up visit, the records stated: "On 3-30-95 again beaten by rival gang members...mom concerned about behavior outbursts, aggression."

Since Ms. Marcial lied about her son's subsequent injuries, and Green's counsel failed to cross-examine her, it was never made clear at trial which injuries sustained by Briseno were actually caused by the first incident in December of 1994, or the second in March of 1995. Moreover, it was never explained what long-term effects the second injury may have caused Briseno, that were not the result of the first injury in December. Lastly, since the record did not include any of Briseno's previous medical records, some of his injuries sustained in the December incident could have also been due to an earlier fight Briseno got himself into, having nothing to do with Green.

The State never attempted to correct any of Ms. Marcial's errors. Although it was not the State that solicited all of her perjured testimony, the State still had a duty to correct it for the court. *See Giglio*, 405 U.S. at 154, 92 S. Ct. at 766, quoting *Napue*, 360 U.S. at 269, 79 S. Ct. at 1177. It was the State that subpoenaed Briseno's medical records and used portions of it to recite to the court in an agreed stipulation regarding how long Briseno spent in the hospital and rehabilitation clinic, as well as what kind of medical procedures he required. The State then requested it be entered into evidence along with the photographs of Briseno used at trial, so the State obviously knew that the information revealed by Briseno's medical records were contradictory to a lot of Ms. Marcial's testimony.

To establish a violation of due process the prosecution need not have known that the testimony was false. *People v. Cihlar*, 111 Ill. 2d 212, 218-19, 489 N.E.2d 859 (1986). However, the prosecutor is charged with knowledge of those acting on behalf of the State in the investigation and prosecution of the case. *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S. Ct. 1555, 1556 (1995). A due process violation may also be found "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *See Giglio*, 405 U.S. at 154, 92 S. Ct. at 766, quoting *Napue*, 360 U.S. at 269, 79 S. Ct. at 1177. Therefore, the State need not have known that the testimony presented by Ms. Marcial was false for a due process violation to exist since the State was actually in possession of evidence (Briseno's medical record) that proved the testimony to be false and misleading. As the Illinois Supreme Court has found, "[U]nder certain circumstances the prosecutor should not be permitted to avoid responsibility for the false testimony

10                                         Revised: 7/20/05

of a government witness by failing to examine readily available information that would establish that the witness is lying." *See People v. Cornille*, 95 Ill. 2d 497, 513, 448 N.E. 2d 857 (1983) (defendant's appeal from denial of post-conviction petition was reversed and remanded for new trial when evidence was discovered that the State's witness lied about credentials and the State never corrected the perjury because it failed to investigate to ensure it was the truth).

The medical reports were not the only evidence of Ms. Marcial's perjury. In addition to the medical reports, Green obtained an affidavit from Taylor Bell, a newspaper columnist for the Chicago Sun-Times, in which Mr. Bell explained that he had done some investigation on this case because he found some things to be suspicious. He discovered information that revealed that Briseno was registered and had attended several schools shortly after the incident occurred on December 26, 1994. Mr. Bell did not believe that the testimony regarding the extent of Briseno's injuries was accurate, especially Ms. Marcial's testimony that Briseno still had not attended school since the incident.

The trial court found Green guilty of attempt murder and found him eligible for the extended term due to the "brutal and heinous" nature of the crime, all based on the alleged injuries suffered by Briseno, as testified to by his mother. At the post-conviction hearing, the trial court even explained that he had believed, "...**the victim was wheelchair bound for the rest of his life and that was the reason for the extended term of forty years**." (emphasis added). At sentencing, the trial court explained why he was sentencing Green to an extended term: "The injuries indicate there must have been something in [Green's] hand to have caused severe injuries that has and will incapacitate Mr. Alfonso Briseno for the rest of his life. . . .When you incapacitate a fellow human being for the rest of his life, who can never achieve anything, not even hope, which you may have, or love, whatever sentence I impose you will one day be free again. Alfonso Briseno will always be captive in his own body, a prisoner forever."

The trial court was not only incorrect in his recollection of the facts of the case since Briseno was not incapacitated physically or mentally as a result of the alleged incident with Green, but the court also heavily relied on the exaggerated and misleading testimony of Ms. Marcial regarding the extent of Briseno's injuries when finding Green guilty and when finding his actions to have been brutal and heinous and sentencing Green to the extended term.

The Illinois Appellate Court, in denying Green's *Napue/Giglio* claim, employed circular reasoning

11                                    Revised: 7/20/05

when it held, "the evidence presented at trial on the issue of Briseno's injuries overwhelming confirmed the severity of Briseno's condition," when it was exactly that record that Green was attacking for its truthfulness. (*See*, Order at 11, Exhibit #4). The court ignored the fact that Briseno's medical records revealed a subsequent severe injury to Briseno's head, which his mother denied at trial, but most likely contributed to any long-term injuries sustained by Briseno. It is also clear from the record that the alleged severity of Briseno's injuries presented at trial by Briseno's mother, and uncorrected by the State or Green's counsel, affected the outcome of trial, sentencing, and even appeal. As with the *Strickland* claim (*See* B below) the Illinois Appellate Court ignored evidence presented by Green. The Illinois Appellate Court's unreasonable application of the correct legal standard to assess this claim warrants this Court's review.

The Illinois Appellate Court also failed to apply the correct legal standard when the court rejected Green's *Giglio* claim because it found it "questionable" whether Briseno's mother's testimony was "perjury." Order at 11. Under *Giglio,* Green did not have to prove that the witness committed perjury, only that the State was aware that the evidence presented was false and failed to correct it. *Giglio*, 405 U.S. at 153-55. Briseno's medical records were in the State's possession and in fact, they used portions of it for stipulations at trial; thus, the State had to have known of Briseno's mother's false testimony and if not, the State should have. Thus, the Illinois Appellate Court's decision was contrary to and an unreasonable application of clearly established United Supreme Court law, including *Napue*, 360 U.S. at 269, and *Giglio,* 405 U.S. at 153-55. *See* 28 U.S.C. Sec. 2245 (d)(1). It was also an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. sec. 2254 (d)(2).

Overall, there is a reasonable likelihood that the false testimony affected the outcome of the trial and sentencing, as Briseno's mother was the only witness to testify about the injuries allegedly suffered by her son as a result of the incident. After all, it was the alleged extent of injuries that led the trial court to sentence Green to an extended term and to deny his subsequent post conviction, and that led the Illinois Appellate Court to incorrectly deny Green's appeals. Without the perjured testimony, the State's entire case would have been undermined, and it is more likely than not that no reasonable fact-finder would have convicted him.

Revised: 7/20/05

**(B)  Ground two:**

Yarmo Green was denied his Sixth Amendment right to effective assistance of counsel where his trial counsel, who suffered from mental illness and crack-cocaine addiction at the time of his representation of Green, did not subject the State's case to meaningful adversarial testing when he failed to investigate, read discovery materials, or present vital evidence, and thus prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648 (1984), alternatively, counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to investigate and present evidence that would have rebutted the State's case for attempted murder and the finding that his conduct was brutal and heinous.

**Supporting facts:**

Green's counsel "entirely failed to subject the prosecution's case to meaningful adversarial testing" in that he failed to present any evidence on Green's behalf, he failed to fully investigate the State's case, read discovery materials provided to him, or present vital evidence that would have changed the outcome of the trial, or in the least changed the outcome of the sentencing.  The State court's decision denying Green's ineffectiveness of trial counsel claim was erroneous because it was "an unreasonable application of clearly established federal law" in *Strickland v. Washington*, 466 U.S. 668 (1984), *United States v. Cronic*, 466 U.S. 648 (1984), *Williams v. Taylor*, 529 U.S. 362, 397 (2000). (*See also Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003)). Furthermore, the Illinois Appellate Court's review of the merits of the claim failed to afford the appropriate weight to some evidence and ignored other evidence; thus it was "an unreasonable determination of the facts."

According to the ARDC disciplinary opinion, during the time in which he represented Green, trial counsel was addicted to crack-cocaine, and suffered from severe mental problems, which led to his suspended license. (*See* Exhibit #3).  Relying on *Cronic*, Green asserted that these circumstances, in combination with the lack of cross-examination of one of the State's key witnesses (Briseno's mother), and a failure to discover and present helpful evidence (Briseno's medical records) in Green's favor, "justif[ied] a presumption that respondent's conviction was insufficiently reliable to satisfy the Constitution." *Cronic*, 466 U.S. at 662.  The Illinois Appellate Court held that this case was not one in which prejudice from the counsel's ineffectiveness should be presumed because this was not a death penalty case, and "the evidence against [Green] was not complicated." Order at 8-9.  Although the gravity of the charge and the complexity

13

of the case were matters discussed in *Cronic,* 466 U.S. at 666, they were by no means set forth as the standard by which counsel's ineffectiveness should be determined. Therefore, the Illinois Appellate Court's application of clearly established federal law in this case was unreasonable. *See* 28 U.S.C. sec. 2254(d)(1).

The Illinois Appellate Court rejected Green's *Strickland* claim on the prejudice prong alone. Order at 9-10. The court, contrary to *Strickland,* 466 U.S. at 694-96, and *Williams v. Taylor,* 529 U.S. 362, 397-98 (2000), failed to weigh the totality of the evidence by only looking to the sufficiency of the trial evidence, and ignoring the impact of the available evidence counsel failed to present that directly contradicted the basis for Green's conviction and sentence. Green's conviction and extended term sentence for attempted murder were based on the trial court's determination that Green hit Briseno with sufficient force to incapacitate Briseno, making him wheelchair bound for the rest of his life, and that the foregoing demonstrated beyond a reasonable doubt that Green intended to kill Briseno, and that Green's conduct was "brutal and heinous." Evidence that was available to Green's counsel but not presented included Briseno's medical records, which revealed that Briseno was progressively recovering from his injuries, until he was involved in another altercation where his head was severely beaten with glass bottles. There was also evidence that Briseno was attending parties and school shortly after the instant altercation. This evidence would have undermined the reliability of Briseno's mother's testimony regarding the nature, extent, and impact of Briseno's injuries; cast further doubt on Natalie Perez's already questionable testimony; and directly rebutted the trial court's finding that formed the bases for Green's attempted murder conviction and extended term sentence.

The Illinois Appellate Court determined that Green was not entitled to an evidentiary hearing on this claim, reasoning that Green could not meet the *Strickland's* prejudice prong. Order at 10. But *Strickland* requires only that a petitioner show a reasonable probability - that is, a less than 50% chance - that the outcome would have been different. *Strickland,* 466 U.S. at 694-96. A reviewing court must evaluate the totality of the evidence, "both that adduced at trial, and the evidence adduced in the [post-conviction] proceeding." *Williams v. Taylor,* 529 U.S. 362, 397 (2000). In *Williams,* the Supreme Court reversed because the state court failed to "accord the appropriate weight" to the totality of the evidence available to trial counsel. *Id.* at 398. That is precisely what the Illinois Appellate Court did in this case; the court

14

assessed only whether the evidence presented at trial was sufficient to support the conviction and sentence, and failed to consider the impact the omitted evidence would have had on the evidence presented at trial, and the inferences to be drawn from it. Order at 9-10.

The lack of effective assistance of counsel evidenced in Green's trial and sentencing was of such a kind that it should "shock the conscience" of this Court, as it made the proceedings "a farce and mockery of justice." *Coardes v. State*, 262 S.C. 493, 206 S.E.2d 264 (1974). Accordingly, the Illinois Appellate Court's decision was an unreasonable application of clearly established United States Supreme Court law, including *Strickland*, 466 U.S. at 694-96, and *Williams*, 529 U.S. at 397. *See* U.S.C. sec. 2254(d)(1).

**(C)  Ground three:**

The trial court sentenced Green to an extended-term sentence, based upon perjured testimony of both Briseno's mother and Natalie Perez, it found that the attempt murder was "brutal and heinous," a fact that was neither pled nor proven beyond a reasonable doubt, in violation of the holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

**Supporting facts:**

Following a bench trial, Green was found guilty of attempt first degree murder, which at the time carried a sentence of not less than three years but not more than 30 years imprisonment. 730 ILCS 5/5-8-1(a)(3) (1992). The trial court then sentenced Green to an extended term sentence of 40 years of imprisonment. This sentence was based upon the circuit court's finding that the attempt murder of Briseno was "brutal and heinous," a fact that was neither pleaded nor proven beyond a reasonable doubt. 730 ILCS 5/5-8-2(a)(2). Green maintains that the *Apprendi* decision announced a new rule that must be applied retroactively to his case because *Apprendi*'s requirement that elements of an enhanced offense be proven beyond a reasonable doubt is a "watershed" procedural rule entitled to retroactive effect. In *Teague v. Lane*, 489 U.S. 288, 311-12 (1989), the U.S. Supreme Court held that new rules that constitute a "watershed rule of criminal procedure" would be excepted from the general non-retroactivity rule.

Revised: 7/20/05

2. Have all grounds raised in this petition been presented to the highest court having jurisdiction?

  YES (  )   NO ( X )

3. If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

  Claim (A)(1) above has not been presented to the highest court in Illinois because the witness who committed perjury at my trial when she was forced to testify that she witnessed me punch the victim in the head, has just recently come forward and recanted her testimony. Her affidavit is attached hereto as Exhibit #1. Since I did not have this information, through no fault of my own, when I filed my post conviction petition, issues of prosecutorial misconduct and actual innocense based on this new evidence were not raised in State court. I am going to file a successive post conviction petition and/or a 735 ILCS 5/2-1401 petition very soon. I have attached a motion to this petition requesting that this Court hold this "protective" habeas corpus petition until I can do so.


## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A)  At preliminary hearing:  Cook County Public Defender
2650 S. California Avenue
Chicago, Illinois 60608

(B)  At arraignment and plea  Same as Preliminary Hearing.

(C)  At trial:  Matthew B. Jasniewski (Private Attorney)

(D)  At sentencing:  Same as Trial

(E)  On appeal:  Ira Sheffey
Cook County Public Defender
69 W. Washington
Chicago, Illinois 60602

(F)  In post-conviction proceeding: Charles K. Piet (Private Attorney)
(at the second-stage of the PC proceedings)
Piet, Schneider & Associates, LTD

(G)  Other (state):  Jessica D. Thomlinson
(appeal from the dismissal of the PC)
Office of the State Appellate Defender
203 N. LaSalle St.  24th Floor
Chicago, Illinois 60601

16                                    Revised: 7/20/05

**PART V – FUTURE SENTENCE**

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO ( X )

Name and location of the court which imposed the sentence: N/A

Date and length of sentence to be served in the future:  N/A


    WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _5 - 28 - 08_
       (Date)

**I declare under penalty of perjury that the foregoing is true and correct.**

    _Yarmo    Green_
Yarmo Green
Register No. B-71883
Graham Correctional Center
P.O. Box 499
Hillsboro, IL  62049

17

Revised: 7/20/05

# Exhibit 1

COUNTY OF COOK    )
                            )SS:
STATE OF ILLINOIS  )

## AFFIDAVIT
## OF
## ADELAIDE B. CORNELL

I, Adelaide B. Cornell, being first duly sworn upon oath, state and depose that I was a witness at the trial against the Defendant in the above-captioned matter. The factual information contained below is true and correct to the best of my knowledge, information, and belief.

1. I testified as a minor at the age of fifteen (15) at the trial against Yarmo Green.

2. I was the prosecution's key witness against Yarmo Green at trial.

3. When I testified at trial, I testified under the assumed name "Natalie Perez."

4. The District 14 police department knew my real name, but allowed me to testify as a minor under the assumed name, referenced above, but without parental consent and/or my guardian at the time, the Department of Children and Family Services' (DCFS) consent, as I was a ward of the state.

5. I knew that Yarmo Green was innocent of the crime against Alfonso Briseno due to the fact that he was talking with me outside the building, down the alley, by a mini-van during the entire incident.

6. I never witnessed Yarmo strike Alfonso.

7. I was told by both the police department and the prosecution to testify against Yarmo Green, rather than against the two (2) other co-defendants at trial.

8. Yarmo Green is African American, while the two (2) co-defendants were Hispanic.

9. When I was first called by the prosecution, I refused to answer questions regarding whether I saw someone hit Alfonso Briseno.

10. I repeatedly testified, however, that I could not go through with testifying further, that I had not wanted to come to court in the first place, but that I had no choice.

11.  Before being recalled the next day, I was threatened by the prosecution that if I did not testify against Yarmo Green that my newborn daughter would be taken away from me by social services should my refusal persist.

12.  I was also paid a nominal amount of cash money by the prosecution to testify against Yarmo Green.

13.  I then, reluctantly, falsely testified that I witnessed Yarmo Green strike Alfonso Briseno in the head, which I knew to be untrue.

14.  After the 1995 trial, at which Yarmo Green was ultimately found guilty of, *inter alia*, the attempted murder of Alfonso Briseno and sentenced to forty (40) years in the Illinois Department of Corrections, I attempted to contact the prosecution to recant my prior testimony during both 1999 and 2000.

15.  I was told by the prosecutor's office, "if you pursue this, you will be arrested for perjury" and "leave it alone, the case is closed, Yarmo has already admitted to the crime."

16.  I have felt extremely guilty given my false testimony for the past thirteen (13) years – the entire time Yarmo Green has been incarcerated – and I understand that I could now face being incarcerated for admitting that I committed perjury at Yarmo Green's trial, but am prepared to do so, if necessary.

17.  I, Adelaide B. Cornell, have not been forced, coerced, paid, threatened or promised anything, by anyone in order to execute this sworn affidavit, but do so freely and voluntarily.

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct.

Date: _May 14, 2008_

_Adelaide Cornell_
Adelaide B. Cornell

SUBSCRIBED AND SWORN to before me
this 14th day of _May_, 2008

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
ANGELA J OZANIC
COMMISSION EXPIRES 08/29/09

**Exhibit 2**

### AFFIDAVIT OF TAYLOR H. A. BELL

I, Taylor H. A. Bell, being first duly sworn on oath, swear that the foregoing facts stated herein are true and accurate t the best of my knowledge and belief:

1.      I was a journalist at the Chicago Daily News/Chicago Sun-Times and I covered high school sports in the Chicago area for over 30 years. I wrote articles on Yarmo Green when he was a football player at Mather High School. After he was arrested in December of 1994, I wrote articles on the progression of his case.

2.      I became interested in learning more about the facts of his case, so I performed my own investigation into Yarmo Green's case. Through my investigations I discovered that the victim, Alfonso Briseno, was at parties soon after the incident in December of 1994 and that he was enrolled in several schools shortly after the incident as well; thus, he was not as badly injured as what was testified to at Yarmo's trial. After investigation, I felt, and still feel, that Yarmo Green's case should be reviewed.

3.      After I had started looking into the case against Yarmo, I received a phone call late at night from a male. He did not identify himself. Instead, he inquired as to why I was looking into Yarmo's case and wanted to know why I was interested. I told him that I felt that there was something not right with the case and wanted to know the truth. He advised me that I should "forget about it" and "drop it."

4.      I believe that phone call was threatening in nature and for the purpose of getting me to stop investigating the case against Yarmo.

*Taylor H. A. Bell*

Subscribed and sworn to before me

This __17th__ day of __May__ 2008.

OFFICIAL SEAL
**LINDA FLAUM**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-11-2011

**Exhibit 3**

*Rules and Decisions*

---

Recently Filed Disciplinary Decisions and Complaints | Rules Governing Lawyers and
Judges | Disciplinary Reports and Decisions | Search Help and Collection Scope | Home

## DECISION FROM DISCIPLINARY REPORTS AND DECISIONS SEARCH

### *Petition Allowed by the Illinois Supreme Court and Imposing Discipline on Consent*

**Allowed February 1, 1999**

### IN THE SUPREME COURT OF ILLINOIS

In the Matter of:

**MATTHEW B. JASNIEWSKI,**          Supreme Court No. M.R. 15359

    Attorney-Respondent,          Commission No. 97 CH 91

    No. 6215243.

### PETITION TO IMPOSE DISCIPLINE ON CONSENT

Mary Robinson, Administrator of the Attorney Registration and Disciplinary
Commission, by her attorney, Dorothy B. Zimbrakos, pursuant to Supreme Court Rule
762(b), with the consent of Respondent Matthew B. Jasniewski and the approval of a
panel of the Hearing Board, petitions the Court to enter an order suspending
Respondent from the practice of law in Illinois for a period of six months and until
further order of the court. In support of the petition, the Administrator states:

### I. BACKGROUND AND SUMMARY OF PETITION

1. Respondent, who was admitted to practice law in Illinois on October 5, 1993 and is
thirty-eight years old, is a sole practitioner who concentrates his practice in criminal
law. Between November, 1995 and December, 1996, Respondent neglected the
criminal appeal of a client, engaged in the unauthorized practice of law after he was
removed from the Master Roll of attorneys authorized to practice law, failed to appear
at a sentencing hearing on a finding of direct criminal contempt by the Illinois
Appellate Court, and failed to return the record on appeal as ordered by the Illinois
Appellate Court. A detailed description of Respondent's conduct is contained in Section
II of this petition, infra at pages 2-4.

2. During the period of time covering Respondent's misconduct, Respondent was
addicted to crack cocaine and marijuana and claimed to suffer from agoraphobia and
depression. The Administrator's expert witnesses agree that Respondent most likely

continues to engage in substance abuse. Additional information concerning evidence in aggravation is contained in Section IV of this petition, infra at page 5.

3. Respondent's suspension for six months and until further order of the court is consistent with the Court's precedent, including In re Czapski, 92 CH 396, N. M.R. 10421 (1994) and In re Ring, 141 Ill.2d 128 (1990). A full description of the recommendation for discipline and a discussion of the Court's precedent is contained in Section V of this petition, infra at pages 6-7.

4. At the time this petition was prepared, a one-count complaint was pending against Respondent before the Hearing Board. Respondent's affidavit pursuant to Supreme Court Rule 762(b) and a copy of the Hearing Board order approving the submission of this matter to the Court are attached as Exhibits One and Two, respectively. A copy of the report of proceedings before the Hearing Board is attached as Exhibit Three.

## II. DESCRIPTION OF MISCONDUCT

5. On January 5, 1996, Respondent filed a written entry of appearance on behalf of Edwin A. Jones ("Jones"), a criminal defendant, in the Illinois Appellate Court. Thereafter, Respondent was paid a fee of approximately $4,100 by Jones and his family to represent Jones in the appeal of his conviction for first degree murder, aggravated battery, and unlawful use of weapons.

6. On February 1, 1996, Respondent's name was removed from the Master Roll of attorneys authorized to practice law for failing to register with the Attorney Registration and Disciplinary Commission as prescribed by Supreme Court Rule 756 (d).

7. Respondent filed four motions to extend the time for filing the opening brief on behalf of Jones. The Appellate Court granted each of those motions, but, in an order entered on May 15, 1996, granted Respondent an extension of time until June 1, 1996 and ruled that any additional motion for extension of time would be looked upon with disfavor.

8. Respondent did not file an opening brief on behalf of Jones by June 1, 1996, nor did Respondent file a motion to extend the time in which to file the brief on or before June 1, 1996.

9. On June 5, 1996, Respondent filed a fifth motion to extend the time for filing the opening brief on behalf of Jones.

10. On June 12, 1996, the Appellate Court entered an order granting Respondent a final extension of time to file Jones's opening brief to June 14, 1996.

11. Respondent did not file Jones's opening brief by June 14, 1996 or at any time thereafter.

12. On June 24, 1996, the Illinois Appellate Court, on its own motion, entered an order which granted Respondent ten days to: (1) file a brief on behalf of Jones; (2) file a motion for an extension of time to file the brief on behalf of Jones; or (3) file a motion

to withdraw as counsel on appeal supported by either a signed affidavit of Jones or an Anders brief.

13. Respondent did not comply with the June 24, 1996 order, and, on September 25, 1996, the Appellate Court, on its own motion, entered an order finding Respondent guilty of direct criminal contempt because, at all relevant times, he was not on the Master Roll of Attorneys authorized to practice law. The September 25, 1996 order also required Respondent to appear at the courthouse in Mt. Vernon on Wednesday, October 2, 1996, at 1:00 p.m. for sentencing on the finding of direct criminal contempt, and to return the record on appeal to the clerk of the court on or before the start of the scheduled hearing on October 2, 1996.

14. On October 2, 1996, Respondent did not appear for sentencing on the finding of direct criminal contempt, nor did he return the record on appeal.

15. On December 23, 1996, the Illinois Appellate Court entered an order that noted the court's unsuccessful efforts to secure the return of the record on appeal from Respondent. The court appointed the State Appellate Defender to represent Jones on appeal and granted the parties sixty days to tender a reconstructed record on appeal.

### III. MISCONDUCT

16. By reason of the conduct described above, Respondent has engaged in the following misconduct:

    a. failure to act with reasonable diligence and promptness in representing a client in violation of Rule 1.3 of the Illinois Rules of Professional Conduct;

    b. failure to make reasonable efforts to expedite litigation consistent with the interests of the client in violation of Rule 3.2 of the Illinois Rules of Professional Conduct;

    c. practicing law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction in violation of Rule 5.5(a) of the Illinois Rules of Professional Conduct;

    d. engaging in the unauthorized practice of law after he was removed from the master roll by the Administrator of the Attorney Registration and Disciplinary Commission for failing to register in violation of Supreme Court Rule 756(d); and

    e. conduct which is prejudicial to the administration of justice or which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute in violation of Supreme Court Rule 771 and Rule 8.4(a)(5) of the Illinois Rules of Professional Conduct.

### IV. DESCRIPTION OF ADMINISTRATOR'S AGGRAVATION EVIDENCE

17. At all relevant time periods, Respondent has abused crack cocaine and marijuana and claims to have suffered from depression and agoraphobia.

18. Respondent attended a drug treatment program at Rush Behavioral Health Center at Lake Forest Hospital ("Rush") from April 10, 1997 to May 8, 1997.

19. Reports from the Rush program indicate that Respondent's participation was marginal and manipulative, that he was unable to accept that his marijuana dependency was an addiction, and that he greatly minimized the effects of his use of drugs. Respondent's commitment to continuing care was described as tenuous, and, on discharge, Respondent's prognosis was "extremely guarded."

20. Rush personnel further stated that Respondent did not appear for the last two days of the treatment program, nor did he follow through on their continuing care recommendations.

21. Given Respondent's history, the Rush experts concluded that Respondent most likely continues to be addicted to drugs.

22. The Administrator retained a psychiatrist, Dr. S. Dale Loomis, to evaluate Respondent's condition. Respondent's counsel informed the Chair of the Hearing Panel that Respondent refused to complete the testing recommended by Dr. Loomis.

23. Although Dr. Loomis was unable to complete his evaluation of Respondent, he opined that Respondent is severely dysfunctional and that his clinical presentation may be drug- related or consistent with underlying psychological factors. Dr. Loomis concluded that Respondent is currently incapable of independent functioning in a professional capacity.

## V. RECOMMENDATION FOR DISCIPLINE
## AND DISCUSSION OF PRECEDENT

24. The Administrator respectfully requests that Respondent be suspended from the practice of law for a period of six months and until further order of the court. The recommended sanction is consistent with the Court's precedent.

25. This Court has suspended attorneys until further order of the court where they have been shown to suffer some impairment that contributed to their misconduct and the condition is not in remission. In In re Czapski, 92 CH 396, No. M.R. 10421 (1994), the attorney was suspended for one year and until further order of the court as a result of his neglect of a legal matter, failure to return funds, and engaging in conduct involving dishonesty and fraud. The record demonstrated that the attorney was alcohol dependent, that he was in denial with respect to his condition, and that he suffered impaired mental functioning that impacted on his professional performance. Similar to the case at hand, expert evidence recommended an extensive plan of treatment, and at the time discipline was imposed, the attorney had not completed any substantial period of rehabilitation.

26. In In re Ring, 141 Ill.2d 128 (1990), the attorney was suspended for six months for neglecting a criminal appeal. In In re Berkos, 93 Ill.2d 408 (1982), the Court imposed a three-month suspension on an attorney who failed to adequately supervise an employee and who neglected a criminal appeal by failing to withdraw from the appeal while he was physically and mentally ill during the pendency of the appeal.

27. In this case, Respondent's misconduct involves neglecting a criminal appeal, engaging in the unauthorized practice of law after he was removed from the Master Roll of attorneys authorized to practice law, failing to appear at a sentencing hearing on a finding of direct criminal contempt by the Appellate Court, and failing to return the record on appeal as ordered by the Appellate Court. A suspension for six months and until further order of the court is within the range of discipline imposed by this Court for similar misconduct and is appropriate in light of the evidence of Respondent's drug abuse and psychological impairment.

28. The Administrator agrees that if Respondent enters into a substance abuse treatment and rehabilitation program and obtains therapy from a qualified mental health expert during the period of suspension, the Administrator would direct the Commission's Probation Officer to verify Respondent's treatment and progress, including verification of abstinence through random drug testing.

**WHEREFORE,** the Administrator, with the consent of the Hearing Board, requests that the Court enter an order suspending Respondent from the practice of law for a period of six months and until further order of the court.

Respectfully submitted,

Mary Robinson, Administrator
Attorney Registration and
Disciplinary Commission

By: Dorothy B. Zimbrakos

Dorothy B. Zimbrakos
Counsel for Administrator
130 East Randolph Dr., #1500
Chicago, Illinois 60601
Telephone: 312-565-2600

*Rules and Decisions*

---

Recently Filed Disciplinary Decisions and Complaints | Rules Governing Lawyers and Judges |
Disciplinary Reports and Decisions | Search Help and Collection Scope | Home

## DECISION FROM DISCIPLINARY REPORTS AND DECISIONS SEARCH

### M.R. 15359 - In re: Matthew B. Jasniewski (February 1, 1999)

Disciplinary Commission.

The petition by the Administrator of the Attorney Registration and Disciplinary Commission to impose discipline on consent pursuant to Supreme Court Rule 762(b) is allowed and respondent Matthew B. Jasniewski is suspended from the practice of law for six (6) months and until further order of Court.

*In re* Matthew B Jasniewski, 97 CH 91  (Supreme Court Order)          Lawyer Search Attorney



**Exhibit 4**

NOTICE
of this order may be
changed or corrected prior to the
for filing of a Petition for
hearing or the disposition of
same. *Thomkinson*

FIFTH DIVISION
JANUARY 12, 2007

1-04-1552

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 1762 |
| | ) | |
| YARMO GREEN, | ) | Honorable |
| | ) | Fred G. Suria, |
| Defendant-Appellant. | ) | Judge Presiding. |

## ORDER

Following a bench trial, defendant-appellant, Yarmo Green (defendant), was found guilty of aggravated battery of Tito Lopez and was found guilty of attempted first degree murder and aggravated battery of Alfonso Briseno. After hearing factors in aggravation and mitigation, the circuit court sentenced defendant to an extended term of 40-years imprisonment, finding that his actions were exceptional, brutal, and heinous.

A notice of appeal was filed with this Court on January 2, 1996. On appeal, defendant argued that (1) the State did not prove beyond a reasonable doubt that defendant had the specific intent to kill Briseno and (2) defendant's sentence was excessive. On August 18, 1998, this Court affirmed defendant's conviction and sentence. See People v. Green, No. 1-96-0161 (Rule 23 Order August 18, 1998).

1-04-1552

On December 1, 1998, defendant filed a pro se post-conviction petition in which he raised five claims. On November 9, 1999, defendant filed a supplemental brief, which augmented the arguments raised in his December 1, 1998 post-conviction petition. On August 10, 2000, the State filed a motion to dismiss defendant's post-conviction petition. On May 3, 2004, following oral arguments, the circuit court granted the State's motion to dismiss defendant's post-conviction petition.

On appeal, defendant argues that (1) the circuit court erred when it dismissed defendant's post-conviction petition without an evidentiary hearing; (2) defendant's post-conviction counsel was ineffective; and (3) Apprendi v. New Jersey (530 U.S. 466 (2000)) applies retroactively to defendant's sentence. We affirm.

BACKGROUND

On December 26, 1994, Claudia Marchan, Natalie Perez, Tito Lopez and Alfonso Briseno were moving furniture out of an apartment located at 2501 North Washtenaw Avenue. Briseno remained in the apartment while Marchan, Perez and Lopez went outside to put furniture into a van parked in the alley. While Marchan, Perez and Lopez were outside, they observed a car drive past them, stop, then drive in reverse towards where they were standing. The car eventually stopped in front of the van, blocking the van into the alley. Defendant, Juan Cardenas and David Robles exited the car and walked toward the van. Marchan, Perez and Lopez recognized defendant, Cardenas and Robles as rival gang members from their neighborhood.

Defendant approached the driver's side door of the van, where Lopez was sitting in the driver's seat and was attempting to start the van. When Marchan and Perez saw defendant walk

2

1-04-1552

toward the van, they moved to the rear of the van, where they attempted to hide from defendant, Cardenas and Robles.

Cardenas opened the sliding door of the van and removed a table in order to enter the van. Upon entering the van, Cardenas struck Lopez in the face and dragged him from the driver's seat of the van to the rear of the van, where he and defendant repeatedly struck him. At this time, defendant allegedly told Marchan, Perez and Lopez that they were "going to die."

While in the rear of the van, defendant continued to beat Lopez and, at one point, defendant attempted to light Lopez's shoes on fire. Lopez, however, was able to kick the lighter out of defendant's hand. Defendant then attempted to pull Lopez out of the van, but Lopez resisted.

After attempting to light Lopez on fire and drag him from the van, defendant told Lopez to choose which of the three men he wished to fight. Defendant told Lopez that he would be allowed to leave if he fought one of the three men. Lopez agreed to fight Robles, who was roughly the same size as Lopez.

After this incident between defendant and Lopez inside the van, defendant, Cardenas, Marchan and Perez all exited the van. When Lopez and Marchan exited the van, they observed Briseno lying face-down on the sidewalk. They noticed that Briseno was not moving and that he had bleeding from his head. Defendant approached Briseno and picked up Briseno by the back of his shirt. Defendant dropped Briseno on the sidewalk and stated that he was dead.

At trial, the State offered the testimony of Perez, who testified regarding the events that led to Briseno lying face-down on the sidewalk. Perez testified that she observed Briseno walk

3

1-04-1552

from the apartment toward the van. Perez testified that she then observed someone strike

Briseno in the head, but, at the time that she testified, she was reluctant to identify the person

who struck Briseno because she had received threats from numerous gang members.  The State

recalled Perez the following day and she testified that on December 26, 1994, she observed

defendant strike Briseno in the head with his hand.  Perez testified that defendant had an object in

his hand at the time he struck Briseno, but she could not confirm the nature of the object.

At approximately the same time that defendant had picked up Briseno by the back of his

shirt and dropped him on the sidewalk, Lopez and Robles were fighting.  After a few minutes,

defendant interrupted the fight between Lopez and Robles and told Robles and Cardenas that

they had to leave because the police would be arriving shortly.  Defendant, Robles and Cardenas

entered defendant's car and fled the scene.  At the same time, Lopez fled the scene on foot.

Once Defendant, Robles and Cardenas had driven from the scene, Marchan and Perez

moved Briseno into the van.  Marchan and Perez entered the van and drove from the scene.

Marchan and Perez drove through the neighborhood looking for Lopez, but they were unable to

find him.  Marchan and Perez then drove the van to Perez's home, where they used Perez's

telephone to call 911.

An ambulance transported Briseno from Perez's home to Children's Memorial Hospital.

Briseno immediately underwent numerous surgical procedures, which included an evacuation

subdural hematoma and drainage procedure and an external ventricular drain procedure.  In

addition, Briseno continued to receive drainage procedures for the following two days.  On

January 5, 1995, Briseno was discharged from Children's Memorial Hospital and transferred to

4

1-04-1552

the Rehabilitation Institute of Chicago, where he stayed until February 16, 1995.

At trial, Briseno's mother, Anna Marcial, testified regarding the injuries Briseno suffered as a result of the incident involving defendant, Cardenas and Robles. Marcial testified that for more than a month following the incident, Briseno was unable to walk, talk or respond to questions. Marcial also testified that, for at least four months after the incident, she dressed and bathed Briseno and she testified that, for at least eight months after the incident, Briseno took medication twice a day to prevent seizures. At the time of trial, Briseno was unable to attend school and he continued to consult with a trauma team twice a week and he continued to attend therapy twice a month. Evidence at trial confirmed that, at the time of the incident, Briseno was 14 years old, 112 pounds, and five-feet tall and defendant was 17 years old, 190 to 200 pounds, and over six-feet tall.

Following trial, the circuit court found defendant guilty of aggravated battery of Lopez and found defendant guilty of attempted first degree murder and aggravated battery of Briseno. After hearing factors in aggravation and mitigation, the circuit court sentenced defendant to an extended term of 40-years imprisonment, finding that his actions were exceptionally brutal, and heinous. On August 18, 1998, we affirmed defendant's conviction and sentence. See People v. Green, No. 1-96-0161 (Rule 23 Order August 18, 1998). On December 1, 1998, defendant filed a pro se post-conviction petition and on November 9, 1999, defendant filed a supplemental brief, which augmented the arguments raised in his December 1, 1998 post-conviction petition. On August 10, 2000, the State filed a motion to dismiss defendant's post-conviction petition, which the circuit court granted on May 3, 2004. Following dismissal of his post-conviction petition on

1-04-1552

May 3, 2004, defendant filed this timely appeal.

## DISCUSSION

On appeal, defendant first argues that the circuit court erred in dismissing his post-conviction petition without an evidentiary hearing. Specifically, defendant asserts that he made a substantial showing that his constitutional rights were violated in that (1) his trial counsel was ineffective; (2) the circuit court failed to correct false testimony presented at trial; and (3) his appellate counsel was ineffective. We disagree.

In a post-conviction petition proceeding, the defendant has the burden of establishing a substantial deprivation of a constitutional right. People v. Henderson, 171 Ill. 2d 124, 131 (1996). Simply filing a post-conviction petition does not entitle a defendant to an evidentiary hearing as a matter of right; on the contrary, a defendant is entitled to an evidentiary hearing only if the allegations in his post-conviction petition, supported by the trial record and any accompanying affidavits, make a substantial showing of a violation of his constitutional rights. People v. Hobley, 182 Ill. 2d 404, 452 (1998). Our supreme court has provided a "simple formula" for determining what standard should be applied by a reviewing court following the dismissal of a post-conviction petition: de novo review for the dismissal of a defendant's post-conviction petition without an evidentiary hearing and review for manifest error when a defendant's post-conviction petition was dismissed following an evidentiary hearing. People v. Johnson, 206 Ill. 2d 348, 357 (2002). In this case, defendant's post-conviction petition was dismissed in the absence of a evidentiary hearing. As such, we review the circuit court's dismissal de novo. We address each alleged deprivation of defendant's constitutional rights in

6

1-04-1552

turn.

First, defendant argues that he has made a substantial showing that his constitutional rights were violated due to the ineffectiveness of his trial counsel. Specifically, defendant claims that his trial counsel was very likely addicted to crack cocaine and marijuana and was suffering from agoraphobia and depression. Defendant points out that the Attorney Registration and Disciplinary Commission (ARDC) subsequently suspended his law license and the ARDC concluded that trial counsel's addiction and mental deficiencies occurred in November and December of 1995.

Defendant asserts that based on the ARDC's suspension, it should be presumed that defendant was prejudiced by trial counsel's alleged ineffectiveness. To support his argument, defendant relies upon United States v. Cronic, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). In Cronic, the United States Supreme Court indicated that prejudice to a criminal defendant may be presumed when the "circumstances surrounding the representation of [defendant] mandate[] an inference that counsel was unable to discharge his duties." Cronic, 466 U.S. at 658, 80 L. Ed. 2d at 667, 104 S. Ct. at 2046. The Cronic standard applies, for example, where there has been a total denial of counsel at a crucial stage in the accused's trial, a denial of the defendant's right to cross examine a witness (Cronic, 466 U.S. at 658-59, 80 L. Ed. 2d at 668-69, 104 S. Ct. at 2046-47), or an admission of defendant's guilt by defense counsel without defendant's consent. See People v. Hattery, 109 Ill. 2d 449, 461-64 (1985); People v. Woods, 151 Ill. App. 3d 687, 694 (1985). In Illinois, there is no per se rule automatically permitting all criminal defendants a new trial whenever they were represented at trial by an attorney who may

7

1-04-1552

have used drugs or who was subsequently subject to disbarment proceedings. People v. Bernardo, 171 Ill. App. 3d 652, 660 (1988). Rather, the test in Illinois is whether, in light of all of the circumstances, it was so unlikely that defendant received effective assistance of counsel at trial that prejudice is presumed. Bernardo, 171 Ill. App. 3d at 660.

Contrary to defendant's assertions, the facts of this case are different from the cases in which the circumstances made it so unlikely that the defendant received effective assistance of counsel at trial that prejudice was presumed. In fact, this case is very similar to the facts presented by People v. Bernardo (171 Ill. App. 3d at 660), a case in which this Court held that it was inappropriate to presume that trial counsel was prejudicially ineffective. In Bernardo, the defendant argued that because counsel had been disciplined by the ARDC for behavior and mental problems which occurred at the time counsel was representing defendant, prejudice should be presumed. In holding that defendant must prove prejudice in order to demonstrate ineffective assistance of counsel, this Court reasoned:

> "In the instant case, the defendant was not prosecuted for offenses which could have resulted in the imposition of the death penalty. Also, the evidence against defendant was not complicated or voluminous; in fact, the State's case in essence consisted of [the victim's] testimony that he saw the defendant shoot him. Defendant's theory was that [the victim] was lying, because he harbored a grudge against defendant ... Defense evidence also sought to establish that it was [a third party] who accidentally shot [the victim], and that [the third party] initially named defendant as the perpetrator because she was fearful that the truth would cause her to lose custody of her children. This defense also did not present complicated or voluminous evidentiary matters. For these reasons, the standard recognized in Cronic [is not appropriate in this case]."

Similar to the facts in Bernardo, in this case, defendant was not prosecuted for offenses which would have resulted in imposition of the death penalty. In addition, the evidence against

8

1-04-1552

defendant was not complicated. Indeed, the most significant evidence against defendant was the testimony of Perez, who testified that she saw defendant strike Briseno in the head, and the testimony of other witnesses, who confirmed that defendant struck Lopez numerous times. In light of this record, we cannot agree with defendant's assertion that the circumstances of this case were such that prejudicial ineffective assistance of counsel should be presumed.

Since we have concluded that a presumption of prejudice is not appropriate based on the circumstances presented by this case, defendant must make a substantial showing that his attorney was ineffective pursuant to the analysis originally set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) trial counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 668, 693, 104 S. Ct. 2052, 2064 (1984); People v. Albanese, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1254 (1984).

First, defendant asserts that his trial counsel's conduct fell below an objective standard of reasonableness in that, inter alia, he failed to discover and present evidence of Briseno's medical records and other possible witnesses to impeach the testimony presented by Briseno's mother, which suggested that Briseno's injuries were severe. Defendant asserts that this evidence would have demonstrated that Briseno's injuries were not as severe as Briseno's mother's testimony suggested. This record confirms, however, that Briseno required serious surgical procedures as a result of the injuries inflicted by defendant. The record also confirms that numerous witnesses

9

1-04-1552

observed Briseno lying face down on the sidewalk, where he was bleeding from his head. Finally, this record confirms that Briseno spent approximately 11 days at Children's Memorial Hospital and approximately six weeks at the Rehabilitation Institute of Chicago. Faced with this record, we cannot say that there is a reasonable probability that either the outcome of his trial or the length of his sentence would have been different if defendant's trial counsel had presented additional mitigating evidence on the issue of Briseno's injuries. Therefore, because there is no reasonable probability that the outcome of the trial or the length of the sentence would have been different, we cannot agree that trial counsel was ineffective. See People v. Grant, 339 Ill. App. 3d 792, 799 (2003) (holding that "where the defendant fails to prove prejudice, the reviewing court need not determine whether [trial] counsel's performance constituted less than reasonable assistance").

Defendant's next argues that his constitutional due process rights were violated in that "perjured testimony" was used during defendant's trial. Specifically, defendant asserts that he is entitled to post-conviction relief because the State knew or should have known that some of the testimony provided by Briseno's mother was untrue. We disagree.

A criminal conviction obtained through the knowing use of false testimony constitutes a violation of due process of law. People v. Coleman, 183 Ill. 2d 366, 391 (1998). However, a conviction obtained by the knowing use of perjured testimony will not be set aside unless there is a "reasonable likelihood" that the false testimony could have affected outcome of the trial. United States v. Bagley, 473 U.S. 667, 678-80 (1985); People v. Olinger, 176 Ill. 2d 326, 345 (1997).

Here, defendant argues that his due process right to a fair trial was undermined because

10

1-04-1552

the testimony from Briseno's mother regarding the nature and extent of Briseno's injuries was perjured. In so asserting, defendant relies on Briseno's medical records and an affidavit from a third party, which suggests that Briseno may have attended school shortly after the incident. First, we note that it is questionable whether defendant's allegations, even if accepted as true, amount to perjury. Second, as stated above, the evidence presented at trial on the issue of Briseno's injuries overwhelmingly confirmed the severity of Briseno's condition after he was attacked by defendant on December 26, 1994. Faced with this record, we simply cannot agree with defendant's assertion that had this evidence been presented at trial, there is a "reasonable liklihood" that the outcome of the trial would have been different.

Next, defendant asserts that he was denied effective assistance of appellate counsel based on appellate counsel's failure to raise on direct appeal trial counsel's alleged ineffectiveness, based on appellate counsel's failure effectively to summarize and argue defendant's appellate issues, and based on appellate counsel's failure to utilize Briseno's medical records. We disagree.

As stated above, in order to prove a claim of ineffective assistance of trial counsel, a defendant must show both deficiency and prejudice. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; People v. Albanese, 104 Ill. 2d at 525. If a defendant fails to prove prejudice, the reviewing court need not determine whether trial counsel's performance constituted less than reasonable assistance. See Grant, 339 Ill. App. 3d at 799. Our supreme court has confirmed that ineffective assistance of appellate counsel claims are measured against the same standard as those dealing with ineffective assistance of trial counsel claims. People v. West, 187

11

1-04-1552

Ill. 2d 418, 435 (1999).

Like his claims of ineffective assistance of trial counsel, defendant's ineffective assistance of appellate counsel must fail because defendant has failed to show that in the absence of appellate counsel's alleged unprofessional errors, there is a reasonable probability that the result of the appeal would have been different. First, as we discussed above, defendant's claim of ineffective assistance of trial counsel lacks merit in that trial counsel's alleged unprofessional errors had no effect on the outcome of either defendant's trial or defendant's sentencing hearing. Therefore, we cannot agree that defendant was prejudiced by appellate counsel's failure to allege ineffective assistance by defendant's trial counsel. Second, our supreme court has confirmed that appellate counsel is not obligated to brief every conceivable issue on appeal (West, 187 Ill. 2d at 435) and, in fact, a review of the arguments raised by appellate counsel during defendant's direct appeal confirms that appellate counsel's arguments were reasonable under the circumstances of defendant's case. Finally, as we stated above, counsel's failure to focus on Briseno's medical records did not result in prejudice since the evidence presented overwhelmingly confirmed that Briseno's injuries were severe. In sum, we conclude that there is not a reasonable likelihood that the outcome of defendant's direct appeal would have been different if appellate counsel had acted differently.

Next, defendant argues his post-conviction counsel failed to provide reasonable assistance. Specifically, defendant claims that post-conviction counsel failed to amend the record to include Briseno's medical records, to include a copy of the ARDC's report on defendant's trial counsel, and to include a copy of the appellate brief from defendant's direct

12

1-04-1552

appeal. We disagree.

A defendant who files a post-conviction petition is entitled to a reasonable level of assistance. People v. McNeal, 194 Ill. 2d 135, 142 (2000). Illinois Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)) sets out certain requirements for post-conviction counsel. Specifically, Rule 651(c) requires that the record must demonstrate that appointed counsel has consulted with the defendant, either by mail or in person, to ascertain the defendant's contentions regarding his claims of a deprivation of constitutional rights; that appointed counsel has examined the record of the trial proceedings; and that appointed counsel has reviewed any petition that the petitioner has filed pro se and has made those amendments that are necessary for an adequate presentation of petitioner's contentions. 134 Ill. 2d R. 651(c).

Like his claims of insufficient assistance by trial counsel and his claims of insufficient assistance by appellate counsel, defendant has failed to show that, during the post-conviction process, he received less than the reasonable assistance to which he was entitled. As stated above during our discussion of defendant's claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel, the evidence at trial overwhelmingly confirmed defendant's guilt and, for the reasons discussed, defendant's post-conviction counsel's failure to include Briseno's medical record, his failure to include a copy of the ARDC's report on defendant's trial counsel, and his failure to include a copy of the appellate court brief from defendant's direct appeal did not result in any prejudice. As such, we cannot conclude that post-conviction counsel failed to comply with Supreme Court Rule 651(c) or that post-conviction counsel otherwise failed to provide reasonable assistance to petitioner during his post-conviction

13

1-04-1552

proceedings.

Defendant's final argument on appeal is that his sentence of 40-years imprisonment for attempted murder is unconstitutional pursuant to Apprendi v. New Jersey (530 U.S. 466, 120 S. Ct. 2248 (2000)) and its progeny because Apprendi should apply retroactively to defendant's case. Our supreme court in People v. De La Paz (204 Ill. 2d 426 (2003)) and, more recently, this Court in People v. Kelley (366 Ill. App. 3d 676 (2006)), confirmed that "the rule in Illinois is that 'Apprendi does not apply retroactively to cases in which the direct appeal process had concluded when Apprendi was decided.'" Kelley, 366 Ill. App. 3d at 684, quoting De La Paz, 204 Ill. 2d 426. Because defendant's direct appeals were exhausted long before Apprendi was decided by the United States Supreme Court, Apprendi does not apply to defendant's case.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

AFFIRMED.

TULLY, J., with O'MARA FROSSARD and GALLAGHER, JJ., concurring.

14

**Exhibit 5**

104453

**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

May 31, 2007


Ms. Jessica D. Thomlinson
Assistant Appellate Defender
203 North LaSalle Street - 24th Flr.
Chicago, IL 60601

No. 104453 - People State of Illinois, respondent, v. Yarmo
              Green, petitioner.  Leave to appeal, Appellate
              Court, First District.


The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on July 6, 2007.

RECEIVED

JUN 0 5 2007

DOCKETING DEPARTMENT
State Appellate Defender, 1st District